# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| PROTECT THE PUBLIC'S TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 23-2084 (RBW) |
| | ) |
| NATIONAL LABOR RELATIONS | ) |
| BOARD, | ) |
| | ) |
| Defendant. | ) |

_____

## MEMORANDUM OPINION

The plaintiff, Protect the Public's Trust, brings this civil action against the defendant, the

National Labor Relations Board (the "NLRB" or the "Board"), pursuant to the Freedom of

Information Act (the "FOIA"), 5 U.S.C. § 552, arising out of its FOIA request seeking, inter alia,

records in the NLRB's possession related to the participation of two members of the NLRB—

Gwynne Wilcox and David Prouty—in matters before the Board involving their former

employers and/or clients, see Complaint ("Compl.") at 1, ECF No. 1.  Currently pending before

the Court are the parties' cross-motions for summary judgment.  See generally Defendant's

Motion for Summary Judgment ("Def.'s Mot."), ECF No. 11; Plaintiff's Cross-Motion for

Summary Judgment ("Pl.'s Mot."), ECF No. 12.  Upon careful consideration of the parties'

submissions,[1] the Court concludes for the following reasons that it must deny without prejudice

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) the defendant's Statement of Points and Authorities in Support of Defendant's Motion for Summary
Judgment ("Def.'s Mem."), ECF No. 11; (2) the Defendant's Statement of Undisputed Material Facts ("Def.'s
Facts"), ECF No. 11; (3) the Combined Statement of Points and Authorities in Support of Plaintiff's Motion for
Summary Judgment and Response in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem."),
ECF No. 13-1; (4) the Plaintiff's Statement of Undisputed Material Facts ("Pl.'s Facts"), ECF No. 13-3; (5) the
defendant's Statement of Points and Authorities in Opposition to Plaintiff's Cross-Motion for Summary Judgment
and Reply in Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"), ECF No. 14; (6) the
(continued . . .)

the defendant's motion for summary judgment and grant in part and deny without prejudice in part the plaintiff's motion for summary judgment.

## I.    BACKGROUND

### A.    The Ethics Memo

On February 26, 2020, the NLRB promulgated a final rule "establishing the standard for determining whether two employers[] . . . are a joint employer under the [National Labor Relations Act]."  Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11,184 (Feb. 26, 2020); see Def.'s Facts ¶ 7.  Subsequently, on September 17, 2021, "[t]he Service Employees International Union filed a complaint seeking to invalidate" that final rule.  Def.'s Facts ¶ 9; see Complaint for Declaratory Judgment and Injunctive Relief, Serv. Emps. Int'l Union v. Nat'l Labor Rels. Bd. ("SEIU"), No. 21-cv-2443 (RC), ECF No. 1.[2]

Shortly thereafter, on "[o]n September 22, 2021, Board Member Gwynne Wilcox emailed the Board's Designated Agency Ethics Officer ('DAEO') [Lori Ketcham] 'asking for [her] guidance on whether she needed to recuse herself from participating in the Board's decision-making concerning" the just-filed SEIU lawsuit.  Pl.'s Facts ¶ 1; see Def.'s Resp. ¶ 1.  And, "[o]n October 5, 2021, the National Right to Work Legal Defense Foundation, Inc.[ (the "Right to Work Foundation")], sent a letter to the Board's Inspector General and the . . . [DAEO] expressing concern about the ethical propriety of two Board Members, David Prouty and

---

(. . . continued)
Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("Def.'s Resp."), ECF No. 14-1; (7) the Plaintiff's Reply in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 16; and (8) the Plaintiff's Corrected Response to Defendant's Statement of Allegedly Material Facts ("Pl.'s Resp."), ECF No. 16-1.

[2] The SEIU litigation was stayed "based on [the d]efendant's representation that it intended to engage in further rulemaking on the joint employer standard," Def.'s Facts ¶ 10, and "[o]n October 27, 2023, the Board issued its new final joint employer rule, rescinding and replacing the 2020 [j]oint [e]mployer [r]ule[,]" id. ¶ 12; see Standard for Determining Joint Employer Status, 88 Fed. Reg. 73,946 (Oct. 27, 2023).  However, the SEIU lawsuit remains ongoing.  See Minute Order (Mar. 12, 2025), No. 21-2443.

Gwynne Wilcox, participating in decision making regarding" the <u>SEIU</u> lawsuit.  Pl.'s Facts ¶ 2; <u>see</u> Def.'s Resp. ¶ 2.  That same day, "the Chief Counsel for Board Member Prouty sent an email [to the DAEO] containing the Right to Work [Foundation] Letter and seeking ethics guidance." Pl.'s Facts ¶ 4; <u>see</u> Def.'s Resp. ¶ 4.

Then, "[o]n October 13, 2021, DAEO Lori Ketcham and Senior Ethics Counsel Jamal M. Allen sent a memorandum" to Members Wilcox and Prouty, with the subject line "Service Employees International Union v. NLRB, Lauren McFerran, John Ring, Marvin Kaplan, Gwynne Wilcox and David Prouty, Civil Action No. 21-2443" (the "Ethics Memo"), Pl.'s Facts ¶ 6; <u>see</u> Def.'s Resp. ¶ 6, in which the DAEO provided guidance on the Members' ethical obligations and ultimately concluded that Members Wilcox and Prouty were not prohibited from participating in the NLRB's consideration of how to respond to the <u>SEIU</u> lawsuit, <u>see generally</u> Compl., Exhibit ("Ex.") 5 (Memorandum from Lori Ketcham, Associate General Counsel, Ethics, and Jamal M. Allen, Special Ethics Counsel, Ethics, to Gwynne A. Wilcox, Board Member, and David M. Prouty, Board Member, re: Service Employees International Union v. NLRB, Lauren McFerran, John Ring, Marvin Kaplan, Gwynne Wilcox and David Prouty, Civil Action No. 21-2443 ("Ethics Memo")), ECF No. 1-5.

**B.    The Plaintiff's FOIA Request**

On December 1, 2021, the plaintiff—"a nonprofit corporation dedicated to restoring public trust in government by promoting the fair and equal application of the rules and standards of ethical conduct to all public servants[,]" Compl. ¶ 4—submitted a request to the NLRB pursuant to the FOIA seeking, <u>inter alia</u>: (1) "records pertaining to the decision by [NLRB Members] Gwynne Wilcox and David Prouty to participate in any future lawsuits or challenges to the joint employer rule[,]" <u>id.</u> ¶ 6; (2) "records related to the drafting, correspondence

concerning, and development" of a November 5, 2021, letter sent by NLRB Chair Lauren McFerran to members of the United States Senate regarding Ms. Wilcox and Mr. Prouty's ethical obligations, see id.; (3) records referenced in that letter "that contributed to the NLRB Ethics office's analysis concerning Members Wilcox and Prouty and their participation in matters involving their former employers or clients[,]" id.; and (4) records "used in support of the decision by the ethics office, Members Wilcox or Prouty, Chair McFerran, or the Inspector General's office to determine there would be no appearance concerns under the catch-all provision in 5 C.F.R. § 502(a)(2)[,]" id.

On January 6, 2022, the plaintiff agreed to accept records released in a similar FOIA request to satisfy the above-referenced portions of the plaintiff's FOIA request. See Pl.'s Facts ¶ 12; Def.'s Facts ¶ 17. Subsequently, on May 3, 2022, the NLRB provided a response to the plaintiff's FOIA request, in which it released—some in full, some in redacted form—forty-three pages of records in response to that similar FOIA request. See Pl.'s Facts ¶ 14; Def.'s Facts ¶ 19. Among those records was a redacted version of the Ethics Memo, along with a letter explaining the redactions made pursuant to FOIA Exemptions 5 and 7(A). See Pl.'s Facts ¶¶ 14, 16; Def.'s Facts ¶ 20.

On July 12, 2022, the plaintiff filed an administrative appeal challenging the defendant's redactions of the Ethics Memo pursuant to FOIA Exemptions 5 and 7(A), see Pl.'s Facts ¶ 17; Def.'s Facts ¶ 22, and on August 25, 2022, the Board granted in part and denied in part the plaintiff's appeal, see Pl.'s Facts ¶ 18; Def.'s Facts ¶ 23. Consequently, on July 18, 2023, the plaintiff filed its Complaint against the NLRB in this case, seeking an unredacted copy of the Ethics Memo. See generally Compl. Between November and December 2023, the parties filed

their cross-motions for summary judgment, see generally Def.'s Mot.; Pl.'s Mot., both of which

this Memorandum Opinion resolves.

## II.    STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment."  Ortiz v. U.S.

Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted).  The "FOIA requires

federal agencies to disclose, upon request, broad classes of agency records unless the records are

covered by the statute's exemptions."  Students Against Genocide v. U.S. Dep't of State, 257

F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v.

U.S. Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be

interpreted with a presumption favoring disclosure and exemptions are to be construed

narrowly.").  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the

withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Just., 475 F.3d 381,

385 (D.C. Cir. 2007) (citation omitted), and the district court must "determine the matter de

novo," 5 U.S.C. § 552(a)(4)(B); see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of the

Press, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden 'on the agency to

sustain its action' and directs the district courts to 'determine the matter de novo.'").  The

defendant's burden "cannot be met by mere conclusory statements."  Wash. Post Co., 863 F.2d

at 101 (citation omitted).  "The agency may meet this burden by filing affidavits describing the

material withheld and the manner in which it falls within the exemption claimed," King v. U.S.

Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how

release of the particular material would have the adverse consequence that the Act seeks to guard

against," Wash. Post Co., 863 F.2d at 101 (citation omitted).

To determine de novo the applicability of the particular exemptions cited by the government to the withheld documents, the Court has the discretion to "examine the contents of [ ] agency records in camera."  5 U.S.C. § 552(a)(4)(B); see Larson v. U.S. Dep't of State, 565 F.3d 857, 869–70 (D.C. Cir. 2009) ("In camera review is available to the district court if the court believes it is needed 'to make a responsible de novo determination on the claims of exception.'" (quoting Juarez v. U.S. Dep't of Just., 518 F.3d 54, 60 (D.C. Cir. 2008))).  The District of Columbia Circuit has specifically noted that

> in camera inspection may be particularly appropriate when [ ] the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims . . . , when the number of withheld documents is relatively small, and when the dispute turns on the contents of the withheld documents, and not the parties interpretations of those documents. . . . These factors identify circumstances under which it would be error for the district court not to review the documents in camera, but they do not present the only circumstances under which the district court may do so.

Spirko v. U.S. Postal Serv., 147 F.3d 992, 996 (D.C. Cir. 1998) (second alteration in original) (internal quotation marks omitted); see Protect Democracy Project, Inc. v. U.S. Nat'l Sec. Agency, 443 F. Supp. 3d 1, 6 (D.D.C. 2020) (noting that in camera review may be appropriate where the agency's affidavits and claims "are conclusory, merely reciting statutory standards, or if they are too vague and sweeping" (quoting Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1387 (D.C. Cir. 1979)).  However, the Circuit has cautioned that district courts "should not resort to [in camera review] routinely on the theory that 'it can't hurt.'"  Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (per curiam); see Juarez, 518 F.3d at 59–60 ("It is true that [the] FOIA provides district courts the option to conduct in camera review, but it by no means compels the exercise of that option." (citations omitted)).

Courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the

underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intel. Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)). However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

### III.    ANALYSIS

The issue before the Court in this case is whether the defendant properly withheld information contained in the Ethics Memo pursuant to Exemption 5 of the FOIA by invoking the attorney work product privilege. See Pl.'s Mem. at 1. The plaintiff contends that the defendant has improperly withheld the information because "[t]he record in this case shows that the Ethics Memo was created to satisfy Members Prouty and Wilcox's requirements under federal ethics regulations and provide any additional protection from potential criminal conflict of interest liability[,]" and therefore, was not created "because of" litigation. Id. at 8. The plaintiff further argues that, even if the privilege applies, the defendant nonetheless improperly withheld the information because (1) the privilege "was waived when the Board summarized the conclusions

of the Ethics Memo and used it as a shield in response to Congressional inquiries into the propriety of Members' Wilcox and Prouty's conduct[,]" id.; (2) and "the Board has failed to show that the disclosure of the full memorandum would harm the interests the exemption is designed to protect[,]" id.  Finally, in the alternative, the plaintiff argues that "to the extent that any part of the Ethics Memo is properly protected by work product privilege, the Board has failed to segregate exempt and non-exempt material properly[,]" and therefore the Court should review in camera the unredacted Ethics Memo to determine the propriety of the withholdings. Id. at 9.

The defendant argues that it "properly withheld portions of the Ethics Memo under the attorney work-product privilege[]" because it "was created specifically in response to the subjective belief of the drafter of the Ethics Memo, [ ] Lori Ketcham, that litigation would likely ensue regarding whether Members Prouty and Wilcox should recuse themselves from participating in litigation decisions regarding the Board's defense in" the SEIU litigation, Def.'s Mem. at 9 (citation omitted), and that Ketcham's belief was "objectively reasonable[]" in light of the "contentious and frequently litigated" nature of the Board's joint employer standards, id.  The defendant further contends that it did not waive the privilege by communicating to certain Members of Congress regarding the Ethics Memo.  See Def.'s Reply at 10–13.  The defendant also argues that it has sufficiently established that release of the Ethics Memo would cause foreseeable harm because "[d]isclosure of the withheld portions of the Ethics Memo would 'impair the NLRB's ability to prepare for and present its position on anticipated legal challenges[,]'" Def.'s Mem. at 11 (citing Def.'s Mot., Ex. (Declaration of Lori Ketcham ("Ketcham Decl.") ¶ 6, ECF No. 11-2), which "would be especially harmful because [the d]efendant anticipates more legal challenges concerning Members Prouty and Wilcox's

participation in drafting and defending the Board's recently published joint employer rule[,]" id. (citing Ketcham Decl. ¶ 5). Finally, the defendant contends that in camera review is unnecessary in this case because it has carried its burden of showing why the privilege applies, including by providing detailed declarations attesting to the propriety of the withholdings, see Def.'s Opp'n at 18, based in part on its own "line-by-line analysis of the withheld portions of the Ethics Memo[,]" id. at 16.

## A.    Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In order to be covered by Exemption 5, a document's "source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dep't of Interior & Bureau of Indian Affs. v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001); see also Burka v. Dep't of Health & Hum. Servs., 87 F.3d 508, 516 (D.C. Cir. 1996) ("[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters."). "Exemption 5 incorporates the privileges that the [g]overnment may claim when litigating against a private party, including the . . . attorney work product privilege[ ] [and] the presidential communications privilege[.]" Abtew v. U.S. Dep't of Homeland Sec., 808 F.3d 895, 898 (D.C. Cir. 2015) (citation omitted).

Based on the current record in this case, the Court concludes that the defendant has not sufficiently established that it properly withheld the contested portions of the Ethics Memo under the work product privilege and Exemption 5. However, because it appears to the Court that

reviewing the withheld portions of the Ethics Memo will aid the Court's de novo determination

of whether the defendant appropriately invoked the attorney work product privilege as to the

withheld portions of the memo, the Court finds that further inquiry is necessary before it makes a

determination as to whether production of those portions is required.  Accordingly, the Court

concludes that it must conduct an in camera review of the unredacted version of the Ethics

Memo.[3]  The Court will further explain the basis for its position below.

### 1. Attorney Work Product Privilege

The defendant invokes the attorney work product privilege as the basis for withholding

the redacted portions of the Ethics Memo.  See Def.'s Mem. at 7.  The attorney work product

privilege "shields materials prepared in anticipation of litigation or for trial by or for another

party or by or for that other party's representative (including the other party's attorney,

consultant, surety, indemnitor, insurer, or agent)." McKinley v. Bd. of Governors of the Fed.

Rsrv. Sys., 647 F.3d 331, 341 (D.C. Cir. 2011) (internal quotations and citation omitted).  This

privilege protects "factual materials prepared in anticipation of litigation, as well as mental

impressions, conclusions, opinions, and legal theories." Heggestad v. U.S. Dep't of Just., 182 F.

Supp. 2d 1, 8 (D.D.C. 2000) (citing Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 620

(D.C. Cir. 1997)).

"Not every document created by a government lawyer, however, qualifies for the

privilege (and thus, the exemption)." Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec.

Off. for U.S. Att'ys, 844 F.3d 246, 251 (D.C. Cir. 2016).  Rather, the District of Columbia

Circuit "ha[s] long required a case-specific determination that a particular document in fact was

---

[3] Because the Court ultimately concludes that it would be premature—based on the current record in this case—to definitively determine whether or not the defendant properly applied the attorney work product privilege in withholding the contested portions of the Ethics Memo, the Court need not determine at this time whether the defendant has waived the privilege or whether it has failed to establish foreseeable harm arising from the release of the withheld portions of the Ethics Memo.

prepared in anticipation of litigation before applying the privilege to government records." Id. (citing Senate of P.R. v. U.S. Dep't of Just., 823 F.2d 574, 586–87 (D.C. Cir. 1987)).  To determine whether a particular document was prepared in anticipation of litigation, the Circuit has adopted a "'because of' test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010) (quoting In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998)).  "For that standard to be met, the attorney who created the document must have 'had a subjective belief that litigation was a real possibility,' and that subjective belief must have been 'objectively reasonable.'" Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 251 (quoting Sealed Case, 146 F.3d at 884).  However, the party invoking the privilege does not have to show that "anticipation of litigation [was] the 'primary motivating purpose' behind the document's creation[,]" Deloitte LLP, 610 F.3d at 136–37, meaning "a document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation[,]" id. at 138.

The government bears the burden of establishing that the document was prepared in anticipation of litigation and thus qualifies for the privilege and the exemption under the FOIA, see Boyd, 475 F.3d at 385, which—as with all FOIA exemptions—must be "narrowly construed[,]" Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 249 (quoting Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011) (internal citations and quotation marks omitted)).  The privilege does not apply, for example, to "a government attorney's 'advice on political, strategic, or policy issues, valuable as it may [b]e[,]'" Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just., 538 F. Supp. 3d, 124, 135 (D.D.C. 2021) (citation omitted), nor does it apply where a document

"would have been created 'in substantially similar form' regardless of the litigation[,]" <u>Ellis v. U.S. Dep't of Just.</u>, 110 F. Supp. 3d 99, 108 (D.D.C. 2015) (quoting <u>Deloitte LLP</u>, 610 F.3d at 138). "The government cannot satisfy [its] burden with affidavits that are vague or conclusory, or merely parrot the statutory standard." <u>Env't Integrity Project v. Small Bus. Admin.</u>, 151 F. Supp. 3d 49, 53 (D.D.C. 2015) (citing <u>Consumer Fed'n of Am. v. U.S. Dep't of Agric.</u>, 455 F.3d 283, 287 (D.C. Cir. 2006)).

Moreover, the government "bears a heavier burden when seeking work-product protection for a multi-purpose document because the D.C. Circuit has also recognized that 'the [work-product] privilege has no applicability to documents prepared by lawyers in the ordinary course of business or for other non-litigation purposes.'" <u>United States v. ISS Marine Servs., Inc.</u>, 905 F. Supp. 2d 121, 134 (D.D.C. 2012) (quoting <u>Sealed Case</u>, 146 F.3d at 887) (internal quotation marks and citation omitted). In such circumstances, the government "must 'explain with reasonable particularity' how the documents withheld as work product were prepared in their particular form 'because of the prospect of litigation' or why they would have been prepared in a different form in the ordinary course of business." <u>U.S. Equal Empl. Opportunity Comm'n v. Geo. Wash. Univ.</u>, 342 F.R.D. 161, 182 (D.D.C. 2022) (quoting <u>U.S. Equal Empl. Opportunity Comm'n v. Geo. Wash. Univ.</u>, No. 17-cv-1978 (CKK), 2021 WL 7907064, at *6 (D.D.C. Sept. 23, 2021)).

Here, in support of its position that it properly redacted and withheld information from the Ethics Memo pursuant to the attorney work product privilege and Exemption 5 of the FOIA, the defendant submits two declarations: (1) the declaration of Nancy E. Kessler Platt, the Associate General Counsel for the Board's Division of Legal Counsel and the Board's Chief FOIA Officer, <u>see</u> Platt Decl. ¶ 1; and (2) the declaration of Lori Ketcham, its Associate General

Counsel, Ethics, and the NLRB's Designated Agency Ethics Official (DAEO), <u>see</u> Ketcham Decl. ¶ 1.  According to the Ketcham Declaration, the Ethics Memo "provides [Ms. Ketcham's] guidance as to whether NLRB Board Members Gwynne Wilcox and David Prouty could participate in the Board's consideration of litigation strategies and decision making regarding" the <u>SEIU</u> lawsuit.  <u>Id.</u> ¶ 2.  The Ketcham Declaration further represents that the Ethics Memo "analyzed under relevant government and legal ethics statutes, rules and regulations" whether Wilcox and Prouty "had an obligation to recuse from participation in decision making regarding" the <u>SEIU</u> lawsuit, <u>id.</u> ¶ 4, and ultimately "conclud[ed] that their recusal was not required under relevant government ethics regulations and recommend[ed] that their participation would not raise appearance concerns, should [they] . . . choose to participate in the litigation[,]" <u>id.</u>

    The Ketcham Declaration further represents that Ms. Ketcham was "aware [at the time when she prepared the Ethics Memo] that the Board's adoption of joint employer standards in recent years through adjudication and rulemaking has been the subject of various challenges, including challenges to Board Members' eligibility to participate in these matters under federal ethics laws[,]" <u>id.</u> ¶ 5 (citations omitted), and that the Ethics Memo "provided a roadmap for addressing ethics issues that could arise in anticipated future litigation, such as the recusal arguments made by the [Right to Work] Foundation in its widely distributed letter[,]" <u>id.</u> According to Ms. Ketcham, she "also intended the Ethics Memo to serve as a starting point for future discussions about similar ethics recusal issues, should additional joint employer rulemaking occur[,]" <u>id.</u>, because "[a]ny such rulemaking would also raise litigation issues concerning the participation of Members Prouty and Wilcox in drafting and defending that rule[,]" <u>id.</u>  Therefore, according to Ms. Ketcham, "[r]eleasing the redacted portions of the Ethics Memo would harm the [defendant] by revealing internal legal analyses and identification of

factors that are relevant to ongoing and future litigation." Id. ¶ 6. Specifically, Ms. Ketcham

notes that the SEIU "litigation is still ongoing and in addition, the door has not closed on their

participation being subject to challenge in future litigation[,]" id., including "anticipated future

litigation challenging the Board's new standard that issued on October 26, 2023[,]" id.

       In further support of the defendant's position regarding the propriety of its withholdings,

the Platt Declaration represents that "[i]n making those redactions, the FOIA Branch reviewed

the Ethics Memo line-by-line" to determine segregability and whether the release of such

information posed foreseeable harm, see Platt Decl. ¶ 13, and that Ms. Platt upheld most of the

FOIA Officer's withholdings, after concluding "that this information was properly withheld

under the work-product privilege because the Ethics Office 'prepared material that included

opinions and analysis, in anticipation of ongoing and future litigation[,]'" id. ¶ 16 (citing Compl.,

Ex. D (Letter from Nancy E. Kessler Platt, Associate General Counsel, Division of Legal

Counsel, National Labor Relations Board to Michael Chamberlain ("NLRB Appeal Response")

at 6, ECF No. 1-4)). Having completed her own line-by-line analysis of the Ethics Memo, see id.

¶ 18, Ms. Platt concluded that "[t]he application of Exemption 5 was appropriate because the

withheld portions of the Ethics Memo are attorney work product created by, and at the direction

of, an attorney for purposes of the Board's defense of ongoing litigation in" the SEIU lawsuit,

"as well as other anticipated litigation[,]" id. ¶ 19.

       The plaintiff counters, arguing, inter alia, that the Ethics Memo "was not prepared

'because of' litigation[,]" Pl.'s Mot. at 10, due to the fact that "the substance and the timing of

the request for ethics advice show that the memo was prepared to ensure compliance with federal

ethics standards that exist irrespective of the cited potential litigation and would have been

prepared in substantially similar form regardless of any particular anticipated litigation[,]" id. In

support of its position, the plaintiff cites several federal ethics law recusal provisions that "exist irrespective of any subsequent or collateral litigation concerns." Id. at 11.  Specifically, the plaintiff notes that federal employees—including Members of the NLRB—must recuse themselves based on certain financial interests and relationships, id. (citing 5 C.F.R. §§ 2635.502(e), 2635.501(a)), but "may participate in a particular matter involving specific parties when authorized by the agency's ethics designee[,]" id. (citing 5 C.F.R. §§ 2635.502(d), (e)). The plaintiff further notes that in addition to these mandatory recusal provisions, the federal ethics "catch-all provision" requires that

> where the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question his [or her] impartiality in the matter, the employee should not participate in the matter unless he [or she] has informed the agency designee of the appearance problem and received authorization from the agency designee.

Id. (quoting 5 C.F.R. § 2635.502(a)).  The plaintiff further argues that "[e]ven where there is no clear mandatory recusal requirement, federal employees have a strong incentive to seek prophylactic ethics advice[]" in order to insulate themselves from potential sanction, including criminal sanctions.  Id. at 11–12.  At bottom, the plaintiff argues that "obtaining an ethics memorandum is generally a best practice in bureaucratic self-preservation, particularly in an agency such as the Board that has a recent history of controversial recusal decisions, that exists irrespective of any litigation[,]" id. at 12, and that the "content, timing, and context of the Ethics Memo confirm" that it was prepared—at least in part—for the purpose of providing ethical guidance pursuant to these federal ethics regulations, id.

As indicated above, the Court must determine based on the current record whether the defendant has met its burden of proving that it appropriately withheld the contested portions of the Ethics Memo pursuant to the attorney work product privilege and Exemption 5—viz.,

whether the defendant has "explain[ed] with reasonable particularity[,]" U.S. Equal Empl.
Opportunity Comm'n, 2021 WL 7907064, at *6, why the withheld portions of the Ethics Memo
"would [not] have been created 'in substantially similar form' regardless of the litigation[,]"
Ellis, 110 F. Supp. 3d at 108 (quoting Deloitte LLP, 610 F.3d at 138), due to the Members'
independent obligations to seek and receive ethical guidance relating to their participation.  The
Court's ruling is complicated by several factors.

First, contrary to the defendant's position, the Court finds that the plaintiff has offered
more than "speculation[]" that the Ethics Memo was drafted at least in part due to the Members'
requests for ethics guidance, Def.'s Reply at 4, rather than solely because of Ms. Ketcham's
subjective anticipation of future litigation.  And, upon independent review of the current record,
including the Ketcham and Platt Declarations, the Court agrees with the plaintiff that it is at least
a disputed fact as to whether the Ethics Office drafted the Ethics Memo in response to the
Members' requests for ethics advice, rather than—or at least in addition to—"because of"
anticipated future litigation.  Sealed Case, 146 F.3d at 884.[4]

The defendant argues that, even assuming arguendo that the Ethics Memo was created, at
least in part, to provide guidance on ethics compliance to the Members, the withheld portions of
the Ethics Memo were nonetheless properly withheld pursuant to the work product privilege
because the record shows that it was also prepared in anticipation of litigation.  Id. at 6.  In
support of its position, the defendant argues that the record indicates that the SEIU litigation
"was the proximate cause [for the preparation] of the [Ethics] Memo[]" given the timing of the

---

[4] Although the defendant argues that "[s]uch bare allegations cannot overcome the presumption of good faith given
to agency declarations[,]" Def.'s Opp'n at 4 (quoting Amiri v. Nat'l Sci. Found., No. 20-cv-2006 (TNM), 2021 WL
4438910 at *4 (D.D.C. Sept. 28, 2021), aff'd 21-5241, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022)), the question
here is not whether the agency's declarations are entitled to a presumption of good faith—indeed, nothing in the
plaintiff's briefing appears to call that into question—but rather, whether the defendant has carried its burden by
describing with reasonable specificity its justifications for the withholdings under the attorney work product
privilege.

Members' requests and the direct reference to the <u>SEIU</u> litigation in the Ethics Memo.  <u>Id.</u>[5]  The

defendant further argues that Ms. Ketcham's anticipation of litigation has proven to be

reasonable because her "concerns about anticipated rulemaking litigation over any rule that

Members Prouty and Wilcox would participate in, have also come to pass[]" since the Ethics

Memo was drafted.  <u>Id.</u> at 7.  Specifically, the defendant notes that: (1) "after [ ] Members

[Prouty and Wilcox] participated in the Board's latest proposed joint employer rulemaking, the

Board responded in its final rule to comments asserting that Members Wilcox and Prouty were

ethically precluded from participating in that rulemaking[,]" <u>id.</u>; (2) the "Board is now defending

that 2023 joint employer rule in two different courts," and that while "neither challenge has yet

raised the ethics issue of the two Members' participation," they could conceivably amend their

challenge or other parties could bring such challenges in separate actions, <u>id.</u>; and (3) the

Members "participation in other matters has been decided in two Board decisions, so far[,]" <u>id.</u>

(citations omitted).  Finally, the defendant argues that although the Right to Work Foundation

Letter may not have "explicitly threaten[ed] litigation," it "demonstrates the objective

reasonableness of [Ms. Ketcham's] concern" regarding future litigation because it referenced the

Right to Work Foundation's representation of "employees involved in litigation before" the

NLRB and because the Right to Work Foundation "is a frequent litigator against the Board in

---

[5] The defendant argues that the "Court should find that [the p]laintiff has conceded, as a factual matter, that [Ms. Ketcham] created the Ethics Memo 'because of' pending and anticipated litigation[,]" Def.'s Reply at 2, because the plaintiff failed to cite to specific portions of the record in its opposition, in contravention of the Court's General Order, <u>see id.</u> at 2–3; <u>see also</u> General Order for Civil Cases Before the Honorable Reggie B. Walton ¶ 13, ECF No. 6 (noting, <u>inter alia</u>, that each party "must furnish precise citations to the portions of the record on which they rely[,]" and that "the Court need not consider materials not specifically identified[]") (citation omitted).  In response, the plaintiff admitted that its prior filing did not comply with the defendant's Order in that it did not restate and respond to the defendant's facts, <u>see</u> Pl.'s Reply at 5 n.1, but emphasized that, as the defendant itself acknowledges, the plaintiff's cross-motion for summary judgment "devoted several pages of briefing" to this issue and included the plaintiff's own statement of facts, albeit in a different format, <u>id.</u> at 5.  In light of the plaintiff's reformatted statement of material facts, and the Court's preference to resolve this matter on the merits rather than on procedural grounds, the Court declines to find that the plaintiff has conceded this fact.

court, including challenges to Board regulations, and other Board actions." Id. at 8 (footnotes omitted).

Despite the defendant's contentions, the Ketcham and Platt Declarations do not directly address the key question in this case, which is how the redacted portions of the Ethics Memo were drafted with the specific perspective of Ms. Ketcham's anticipation of litigation, distinct from how the Ethics Memo would have been drafted under normal circumstances where a Member merely sought recusal guidance. Specifically, although the defendant argues that "[t]he [Ethics] Memo was created specifically in response to the subjective belief of the drafter of the Ethics Memo, DAEO Lori Ketcham, that litigation would likely ensue regarding" the Members' recusals, see Def.'s Mem. at 9, the record and the Ketcham Declaration appear to undermine that representation. As the record indicates, Member Wilcox contacted the Ethics Office on September 22, 2021, "seek[ing] the DAEO's guidance on a recusal question concerning a lawsuit filed by SEIU against the [NLRB]." Platt Decl. ¶ 10; see also Platt Decl., Ex. 1 (Email Correspondence between Gwynne Wilcox and Lori Ketcham), ECF No. 11-5. And, on October 5, 2021, Member Prouty's General Counsel contacted the Ethics Office, requesting ethics guidance concerning the necessity of his recusal in the SEIU litigation, in response to a letter submitted to Ms. Ketcham and David P. Berry, the NLRB's Inspector General, by the Right to Work Foundation. See Platt Decl. ¶ 11; see also Platt Decl., Ex. 2 (Email Correspondence between David Goldman, Lori Ketcham, and Jamal Allen), ECF No. 11-6. In its letter, the Right to Work Foundation "express[ed] [its] opposition" to the Members' participation in the SEIU litigation, noting that their recusal was "of interest" because the Right to Work Foundation "frequently provide[s] free legal representation to employees involved in litigation before the [NLRB] against SEIU or its affiliates." Def.'s Mot., Ex. 1 (Letter from

Right to Work Foundation to David P. Berry, Inspector General, National Labor Relations

Board, and Lori Ketcham, Associate General Counsel, National Labor Relations Board (Oct. 5,

2021) ("Right to Work Foundation Letter") at 1, ECF No. 11-3.  The Right to Work Foundation

urged Ms. Ketcham and Inspector General Berry "to take all appropriate action to remove

Member Prouty and Member Wilcox from any decision making or advisory role connected with

the [SEIU l]itigation, the Joint-Employer Rule that SEIU challenges . . . , and any other matters

involving SEIU and/or its affiliates."  Id.

　　　Although the defendant argues that the Right to Work Foundation Letter, in tandem with

other challenges to the Board's latest joint employer rulemaking, underscores the reasonableness

of Ms. Ketcham's anticipation of litigation, it appears to the Court that the Members had an

independent ethical obligation to seek that guidance independent of any anticipated litigation,

and nothing in the unredacted portion of the Ethics Memo appears to reference litigation

strategies or defenses.[6]  See generally Ethics Memo.  Therefore, although the defendant contends

that the Ethics Memo served as a "roadmap for addressing ethics issues that could arise in

anticipated future litigation[,]" Ketcham Decl. ¶ 5, it appears plausible to the Court—based on

the current record—that the impetus for the drafting of the Ethics Memo was to respond to the

Members' requests for guidance pursuant to their independent ethical obligations.

　　　Further complicating the Court's assessment of the propriety of the defendant's

withholdings is the redacted Ethics Memo itself.  The unredacted Executive Summary of the

Ethics Memo notes that the Ethics Office "has concluded that under both the relevant

---

[6] The Court is similarly unpersuaded by the defendant's contention that the mere existence of litigation concerning contentious rulemaking, such as the joint employer rule, renders the withheld portions of the Ethics Memo protected by work product privilege.  See Def.'s Mot. at 10–11.  Adopting such a holding would run afoul of this Circuit's requirement that a district court make "a case-specific determination that a particular document in fact was prepared in anticipation of litigation before applying the privilege to government records."  Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 251 (citing Senate of P.R., 823 F.2d at 586–87).

government and legal ethics provisions, Member Wilcox and Member Prouty do not have to recuse from consideration of the [SEIU] lawsuit[,]" and that their participation "would not raise appearance concerns" under the catch-all provision that would warrant recusal. Ethics Memo at 1. Although nearly the entirety of the background section of the Ethics Memo is redacted, the unredacted subsection headers indicate that this section reviewed the NLRB's joint employer standard, the SEIU litigation, the Right to Work letter's contents, and the backgrounds of Members Wilcox and Prouty. See Ethics Memo at 1–4.

Similarly, although the analysis section of the Ethics Memo is heavily redacted, the unredacted summary indicates that the Ethics Memo evaluated the need for either Member to recuse themselves under: (1) "18 U.S.C. § 208, which is the criminal conflict of interest statute covering conflicting financial interests;" (2) "the Biden Ethics Pledge (Executive Order 13989);" and (3) "the Standards of Ethical Conduct for Employees of the Executive Branch regulations (The Standards of Conduct) codified at 5 C.F.R. § 2635.502, covering outside business and personal relationships." Id. at 4 (footnote omitted). The redacted portions of these analysis sections, read in context, appear to be the application of the relevant standards to each of the Members, which may—or may not—reference anticipated arguments in litigation, as opposed to merely offering guidance as to the applicability and effect of those ethical rules, independent of any litigation.

The Ethics Memo also indicates that the Ethics Office "considered whether recusal is warranted under the relevant legal ethics rules and as a matter of due process and prejudgment." Id. at 4; see also id. at 12 ("In addition to the government ethics regulations, we have also considered whether there are any legal ethics considerations that may raise recusal concerns in the court litigation."). As with the other redacted portions of the Ethics Memo, these sections

may or may not reflect that they were drafted uniquely "because of" anticipated litigation relating to the Members' participation, Deloitte LLP, 610 F.3d at 137; however, these portions are almost entirely redacted, and the few sentences that have been released frame the Ethics Memo's analysis as analyzing whether there are "ethics concerns" that would "prohibit" the members from participating in the matter, Ethics Memo at 13. Therefore, although, as a general matter, due process, as well as bias or prejudgment, may form the basis for litigation regarding the participation of an individual in a given proceeding, without more, the Court is not satisfied that such is the case here.

Due to these ambiguities, the Court cannot conclude on the current record that the defendant has met its burden of establishing that the document was prepared in anticipation of litigation and thus qualifies for the privilege and the exemption under the FOIA. See Boyd, 475 F.3d at 385. Specifically, the Court cannot conclude that the defendant has "explain[ed] with reasonable particularity how the withheld [portions of the Ethics Memo] w[ere] uniquely preprared because of the prospected of litigation" in light of the existence of the Members' independent legal obligation to seek and obtain ethical guidance regarding the need for their recusal in the SEIU litigation. U.S. Equal Empl. Opportunity Comm'n, 2021 WL 7907064, at *6. However, because it is certainly possible that at least some of the withheld portions of the Ethics Memo could indicate that the privilege and exemption apply, the Court believes further inquiry on its part is necessary. Accordingly, the Court concludes that it must conduct an in camera review of the unredacted version of the Ethics Memo to assess de novo the applicability of the attorney work product privilege—and thus, Exemption 5—claimed by the defendant for withholding the redacted portions of the Ethics Memo pursuant to the FOIA. See Larson, 565 F.3d at 869–70.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must deny without prejudice the defendant's motion for summary judgment. The Court further concludes that it must grant in part and deny without prejudice in part the plaintiff's motion for summary judgment. Specifically, the Court must grant the plaintiff's motion to the extent it seeks in camera review of the unredacted version of the Ethics Memo and deny without prejudice the plaintiffs' motion in all other respects. Accordingly, the Court directs the defendant to submit the unredacted version of the Ethics Memo to the Court for its in camera review. The parties may then renew their motions for summary judgment, further supplementing them consistent with the Court's findings in this Memorandum Opinion, should they wish to do so. If, after its in camera review of the unredacted version of the Ethics Memo, the Court concludes that all of the information has been appropriately withheld under the claimed FOIA exemption, it will issue a Memorandum Opinion and Order granting the defendant's renewed motion for summary judgment on that ground and denying the plaintiff's renewed cross-motion. On the other hand, if the Court concludes after its in camera review that any of the redacted information was inappropriately withheld, it will issue a Memorandum Opinion and Order that comports with that finding.

**SO ORDERED** this 29th day of April, 2025.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.