**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PROTECT THE PUBLIC'S TRUST, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 23-2084 (RBW) |
| NATIONAL LABOR RELATIONS BOARD, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

The plaintiff, Protect the Public's Trust, brings this civil action against the defendant, the

National Labor Relations Board (the "NLRB" or the "Board"), pursuant to the Freedom of

Information Act (the "FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C.

§§ 2201, 2202, arising out of its FOIA request seeking, inter alia, records in the Board's

possession related to the participation of two Board members—Gwynne Wilcox and David

Prouty—in matters before the Board involving their former employers and/or clients, see

Complaint ("Compl.") at 1, ECF No. 1.  Currently pending before the Court are the parties'

renewed cross-motions for summary judgment.  See generally Defendant's Renewed Motion for

Summary Judgment ("Def.'s Mot."), ECF No. 24; Plaintiff's Renewed Cross-Motion for

Summary Judgment ("Pl.'s Mot."), ECF No. 25.  Upon careful consideration of the parties'

submissions,[1] the Court concludes for the following reasons that it must grant the defendant's

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Statement of Points and Authorities in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Mem."), ECF No. 24; (2) the Defendant's Renewed Statement of Undisputed Material Facts ("Def.'s Facts"), ECF No. 24; (3) the Declaration of Lori Ketcham ("Ketcham Decl."), ECF No. 24-2; (4) the Declaration of Jamal Allen ("Allen Decl."), ECF No. 24-4; (5) the Second Declaration of Nancy E. Kessler Platt ("2d Platt Decl.") , ECF No. 24-6; (6) the Combined Statement of Points and Authorities in Support of Plaintiff's

(continued . . .)

renewed motion for summary judgment and deny the plaintiff's renewed cross-motion for summary judgment.

## I.    BACKGROUND

The Court outlined the factual and procedural background of this case in its earlier Memorandum Opinion issued on April 29, 2025, and therefore will not reiterate every fact contained in that opinion here.  See Protect the Public's Trust v. Nat'l Labor Rels. Bd., No. 23-cv-2084 (RBW), 2025 WL 1233894, at *1–2 (D.D.C. Apr. 29, 2025).  The Court will, however, set forth the facts that remain pertinent to the resolution of the parties' renewed cross-motions for summary judgment.

## A.    The Board's Joint Employer Standards and the Service Employees International Union Lawsuit

"The Board has utilized various standards to determine whether two employers, as defined in the National Labor Relations Act ('the Act') are joint employers of particular employees within the meaning of the Act."  Def.'s Facts ¶ 1.  In 2015, the Board set forth its view of the appropriate joint employer standard in Browning-Ferris Industries of California, Inc., d/b/a BFI Newby Island Recyclery, 362 NLRB 1599 (2015).  See Def.'s Facts ¶ 2 (citing 87 Fed. Reg. 54,641, 54,642 (Sept. 7, 2022)).  However, "[i]n December 2017, after a change in the Board's composition, the new Board majority issued a decision overruling Browning-Ferris and

---

(. . . continued)
Renewed Motion for Summary Judgment and Response in Opposition to Defendant's Renewed Motion for Summary Judgment ("Pl.'s Mem."), ECF No. 25-1; (7) the Plaintiff's Statement of Undisputed Material Facts ("Pl.'s Facts"), ECF No. 25-3; (8) the Plaintiff's Response to Defendant's Statement of Allegedly Material Facts ("Pl.'s Resp."), ECF No. 25-4; (9) the defendant's Statement of Points and Authorities in Opposition to Plaintiff's Renewed Cross-Motion for Summary Judgment and Reply in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Reply"), ECF No. 28; and (10) the Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("Def.'s Resp."), ECF No. 28.  The Court also reviewed in camera the unredacted Ethics Memorandum. See Notice of In Camera Submission (May 19, 2025), ECF No. 21.

restoring the preexisting joint employer standard." Id. ¶ 3 (citing Hy-Brand Indus. Contractors, Ltd., 365 NLRB No. 156 (Dec. 14, 2017)). In response, "[t]he charging parties in the Board's administrative Hy-Brand case filed a motion for reconsideration, seeking the recusal of [a] former Board Member [ ] based on ethics issues they raised[,]" id. ¶ 4, and, in 2018, "[t]he Board granted that motion and vacated its earlier decision because of those ethics issues, based on a determination by the Agency's Designated Agency Ethics Official ('DAEO')[,]" id. ¶ 5 (citing Hy-Brand Indus. Contractors, Ltd., 366 NLRB No. 26 (Feb. 26, 2018), further motion for reconsideration denied, 366 NLRB No. 93 (June 6, 2018)).

Subsequently, on February 26, 2020, the Board promulgated a final rule establishing a new joint employer standard. See Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11,184 (Feb. 26, 2020). On September 17, 2021, "[t]he Service Employees International Union filed a complaint seeking to invalidate" that final rule. Def.'s Facts ¶ 9; see Complaint for Declaratory Judgment and Injunctive Relief, Serv. Emps. Int'l Union v. Nat'l Labor Rels. Bd. ("SEIU"), No. 21-cv-2443 (RC), ECF No. 1.[2]

B.     **The Board Members' Request for Ethics Guidance and the Drafting of the Ethics Memorandum**

Shortly after the SEIU filed its complaint seeking to invalidate the Board's final rule, on "[o]n September 22, 2021, Board Member Gwynne Wilcox emailed the Board's . . . [DAEO, Lori Ketcham,] 'asking for [her] guidance on whether she needed to recuse herself from participating in the Board's decision-making concerning" the just-filed SEIU lawsuit. Pl.'s Facts

---

[2] The SEIU litigation was "held in abeyance based on the Board's issuance of a new rule[,]" Def.'s Facts ¶ 9, which the Board issued in October 2023, see id. However, that rule was vacated in 2024, see id. (citing Chamber of Com. of the U.S. v. Nat'l Labor Rels. Bd., 723 F. Supp. 3d 498, 518–19 (E.D. Tex. 2024)), and "[t]hus, the currently operative joint employer standard remains the 2020 Rule[,]" Def.'s Facts ¶ 9. The SEIU lawsuit remains unresolved. See Minute Order (May 5, 2025), No. 21-cv-2443.

¶ 1; see Def.'s Resp. ¶ 1.  And, "[o]n October 5, 2021, the National Right to Work Legal Defense Foundation, Inc., sent a letter to the Board's Inspector General and the . . . [DAEO] expressing concern about the ethical propriety of two Board Members, David Prouty and Gwynne Wilcox, participating in decision making regarding" the SEIU lawsuit.  Pl.'s Facts ¶ 2; see Def.'s Resp. ¶ 2; see also Ketcham Decl., Exhibit ("Ex.") 1 (Letter from Right to Work Foundation to David P. Berry, Inspector General, National Labor Relations Board, and Lori Ketcham, Associate General Counsel, National Labor Relations Board (Oct. 5, 2021) ("Right to Work Letter")) at 1, ECF No. 11-3.  That same day, "the Chief Counsel for Board Member Prouty sent an email [to the DAEO] containing the Right to Work Letter and seeking ethics guidance."  Pl.'s Facts ¶ 4; see Def.'s Resp. ¶ 4.

Then, "[o]n October 13, 2021, DAEO Lori Ketcham and Senior Ethics Counsel Jamal M. Allen sent a memorandum" to Members Wilcox and Prouty, with the subject line "Service Employees International Union v. NLRB, Lauren McFerran, John Ring, Marvin Kaplan, Gwynne Wilcox and David Prouty, Civil Action No. 21-2443[,]" Pl.'s Facts ¶ 6; see Def.'s Resp. ¶ 6, in which the DAEO provided guidance on the Members' ethical obligations and ultimately concluded that Members Wilcox and Prouty were not prohibited from participating in the Board's consideration of how to respond to the SEIU lawsuit, see generally Compl., Ex. 5 (Memorandum from Lori Ketcham, Associate General Counsel, Ethics, and Jamal M. Allen, Special Ethics Counsel, Ethics, to Gwynne A. Wilcox, Board Member, and David M. Prouty, Board Member, re: Service Employees International Union v. NLRB, Lauren McFerran, John Ring, Marvin Kaplan, Gwynne Wilcox and David Prouty, Civil Action No. 21-2443 ("Ethics Memo")), ECF No. 1-5.

C.      The Plaintiff's FOIA Request

On December 1, 2021, the plaintiff submitted a request to the Board pursuant to the FOIA seeking records relating to Board Members Wilcox and Prouty's participation in future lawsuits or challenges to the joint employer rule, see Compl. ¶ 6, and after the parties conferred and the defendant produced responsive records, the only document remaining at issue was the Ethics Memo, which the defendant produced with redactions pursuant to FOIA Exemptions 5 and 7(A), see Pl.'s Facts ¶¶ 11–17; Def.'s Facts ¶¶ 13–19.  On July 18, 2023, after the Board granted in part and denied in part the plaintiff's administrative appeal, see Pl.'s Facts ¶ 18; Def.'s Facts ¶ 20, the plaintiff filed its Complaint against the Board, seeking an unredacted copy of the Ethics Memo, see generally Compl.

On April 29, 2025, the Court issued a Memorandum Opinion and Order denying without prejudice the defendant's motion for summary judgment and granting in part and denying without prejudice in part the plaintiff's cross-motion for summary judgment.  See generally Protect the Public's Trust, 2025 WL 1233894.  The Court granted the plaintiff's cross-motion for summary judgment to the extent that it sought to have the Court review in camera the unredacted version of the Ethics Memo to determine whether it was appropriately protected by the attorney work product privilege, based on the Court's conclusion that, from its review of the redacted Ethics Memo, the Court could not determine whether the defendant had adequately established that it was drafted in anticipation of litigation, rather than for the purpose of satisfying the Members' independent legal obligation to seek and obtain ethical guidance regarding recusal obligations, and thus, further inquiry by the Court was necessary.  See id. at *7–10.

As directed by the Court, the defendant submitted the unredacted Ethics Memo to the Court for its in camera review on May 19, 2025.  See Notice of In Camera Submission at 1 (May

5

19, 2025), ECF No. 21.  In compliance with the Court's renewed scheduling order, the defendant filed its renewed motion for summary judgment on July 18, 2025.  See Def.'s Mot. at 1.  On August 22, 2025, the plaintiff filed its renewed cross-motion for summary judgment and opposition to the defendant's renewed motion for summary judgment.  See Pl.'s Mot. at 1.  And, on September 19, 2025, the defendant filed its combined opposition to the plaintiff's renewed cross-motion for summary judgment and reply in further support of its own renewed motion.  See Def.'s Opp'n at 1.  The plaintiff has not filed a reply in support of its cross-motion for summary judgment.

## II.   STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment."  Ortiz v. U.S. Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted).  The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly.").  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Just., 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted), and the district court must "determine the matter de novo," 5 U.S.C. § 552(a)(4)(B); see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'").  The defendant's burden "cannot be met by mere conclusory statements."  Wash. Post Co., 863 F.2d

at 101 (citation omitted).  "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed," King v. U.S. Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how release of the particular material would have the adverse consequence that the Act seeks to guard against," Wash. Post Co., 863 F.2d at 101 (citation omitted).

Courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intel. Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).  However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

In 2016, Congress amended the FOIA to add a "foreseeable harm" requirement, which allows withholding of information "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or the "disclosure is prohibited by law."  5 U.S.C.

7

§ 552(a)(8)(A)(i). "Stated differently, 'pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest' and if the law does not prohibit the disclosure." Judicial Watch, Inc. v. U.S. Dep't of Com., 375 F. Supp. 3d 93, 98 (D.D.C. 2019) (quoting Rosenberg v. U.S. Dep't of Def., 342 F. Supp. 3d 62, 72 (D.D.C. 2018)).

### III.    ANALYSIS

In its renewed motion for summary judgment, the defendant argues that it is entitled to summary judgment on the plaintiff's claims because: (1) it properly withheld the Ethics Memo pursuant to Exemption 5 of the FOIA by invoking the attorney work product privilege due to the fact that the Ethics Memo was drafted "not only to respond to the requests for ethics guidance from Members Wilcox and Prouty, but also, because of the (still-) pending SEIU v. NLRB litigation, challenging the Board's 2020 Joint Employer Rule[,]" see Def.'s Mem. at 20; and (2) it has satisfied the FOIA's foreseeable harm requirement by explaining how disclosure of the full Ethics Memo would impair its litigation positions and the ethics recusal process more generally, see id. at 26–27. In support of its position, the defendant has submitted sworn declarations from (1) Lori Ketcham, then the Associate General Counsel, Ethics, and the Board's Designated Agency Ethics Official (DAEO),[3] see Ketcham Decl. ¶ 1; (2) Jamal Allen, the Independent Special Ethics Counsel and the Board's Alternate DAEO, see Allen Decl. ¶ 1; and (3) Nancy E. Kessler Platt, the Associate General Counsel for the Board's Division of Legal Counsel and the Board's Chief FOIA Officer, see 2d Platt Decl. ¶ 1.

---

[3] The defendant represents that, since the submission of its initial motion for summary judgment, Ms. Ketcham has "retired from the NLRB." Def.'s Mem. at 21 n.8. Thus, the Ketcham Declaration submitted in support of its renewed motion for summary judgment is the same declaration previously submitted.

In its renewed cross-motion for summary judgment, the plaintiff again contends that the defendant has improperly withheld the requested information because "[t]he record in this case still shows that the Ethics Memo was created to satisfy Members Prouty and Wilcox's requirements under federal ethics regulations and provide [them] any additional protection from potential criminal conflict of interest liability[,]" and therefore, was not created "because of" litigation.  Pl.'s Mem. at 9.  The plaintiff further argues that, even if the privilege applies, the defendant nonetheless improperly withheld the information because (1) the privilege "was waived when the Board summarized the conclusions of the Ethics Memo and used it as a shield in response to Congressional inquiries into the propriety of Members' Wilcox and Prouty's conduct[,]" id.; (2) and "the Board has failed to show that the disclosure of the full memorandum would harm the interests the exemption is designed to protect[,]" id.  Finally, in the alternative, the plaintiff argues that even if "the Board has met its burden to show that any part of the Ethics Memo is protected by the work-product privilege . . . , the Board has failed to segregate exempt and non-exempt material properly[,]" id. at 27, and therefore, having reviewed in camera the unredacted Ethics Memo, the Court should "order immediate disclosure of all remaining non-privileged text, if any exists[,]" id. at 28.[4]

In reply, the defendant argues that it has not waived the attorney work product privilege because the Board "has already released to [the p]laintiff the portions of the Ethics Memo which

---

[4] Although the Complaint purports to raise a claim under the Declaratory Judgment Act, see Compl. ¶ 1, the plaintiff failed to advance this claim in its cross-motion for summary judgment and opposition to the defendant's motion for summary judgment, despite the defendant's arguments that the Declaratory Judgment Act is inapplicable in this case because the plaintiff has failed to raise a "policy or practice" challenge under the FOIA, see Def.'s Mem. at 31 n.11 (citing Middle East Forum, v. U.S. Dep't of Treasury, 317 F. Supp. 3d 257, 265 (D.D.C. 2018)).  The Court agrees with the defendant, and therefore treats the plaintiff's request for relief pursuant to the Declaratory Judgment Act as conceded.  See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citations omitted).

contain the exact information disclosed in" the Board Chairman's one-paragraph summary of the Ethics Memo conclusions in a letter she sent to several members of Congress, Def.'s Reply at 11, and because the Board "has never sought to use the Ethics Memo in any adversary process against [the p]laintiff[,]" id., such that it used the Ethics Memo as both as sword and a shield, as the plaintiff argues.

**A.      FOIA Exemption 5**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  In order to be covered by Exemption 5, a document's "source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  Dep't of Interior & Bureau of Indian Affs. v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001); see also Burka v. Dep't of Health & Hum. Servs., 87 F.3d 508, 516 (D.C. Cir. 1996) ("[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters.").  "Exemption 5 incorporates the privileges that the [g]overnment may claim when litigating against a private party, including the . . . attorney work product privilege . . . ."  Abtew v. U.S. Dep't of Homeland Sec., 808 F.3d 895, 898 (D.C. Cir. 2015) (citation omitted).  Upon consideration of the parties' renewed submissions, the defendant's supplemental declarations, and having reviewed in camera the unredacted Ethics Memo, the Court concludes that the Ethics Memo is protected from disclosure under the attorney work product privilege and Exemption 5.

**1. Attorney Work Product Privilege**

The defendant invokes the attorney work product privilege as the basis for withholding the redacted portions of the Ethics Memo.  See Def.'s Mem. at 8.  The attorney work product

10

privilege "shields materials prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." McKinley v. Bd. of Governors of the Fed. Rsrv. Sys., 647 F.3d 331, 341 (D.C. Cir. 2011) (internal quotations and citation omitted). This privilege protects "factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories." Heggestad v. U.S. Dep't of Just., 182 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 620 (D.C. Cir. 1997)).

"Not every document created by a government lawyer, however, qualifies for the privilege (and thus, the exemption)." Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for U.S. Att'ys, 844 F.3d 246, 251 (D.C. Cir. 2016). Rather, the District of Columbia Circuit "ha[s] long required a case-specific determination that a particular document in fact was prepared in anticipation of litigation before applying the privilege to government records." Id. (citing Senate of P.R. v. U.S. Dep't of Just., 823 F.2d 574, 586–87 (D.C. Cir. 1987)). To determine whether a particular document was prepared in anticipation of litigation, the Circuit has adopted a "'because of' test, asking 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010) (quoting In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998)). "For that standard to be met, the attorney who created the document must have 'had a subjective belief that litigation was a real possibility,' and that subjective belief must have been 'objectively reasonable.'" Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 251 (quoting Sealed Case, 146 F.3d at 884). However, the party invoking the privilege does not have to show that "anticipation of

litigation [was] the 'primary motivating purpose' behind the document's creation[,]" Deloitte

LLP, 610 F.3d at 136–37, meaning "a document can contain protected work-product material

even though it serves multiple purposes, so long as the protected material was prepared because

of the prospect of litigation[,]" id. at 138.

The government bears the burden of establishing that the document was prepared in

anticipation of litigation and thus qualifies for the privilege and the exemption under the FOIA,

see Boyd, 475 F.3d at 385, which—as with all FOIA exemptions—must be "narrowly

construed[,]" Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 249 (quoting Milner v. Dep't of

Navy, 562 U.S. 562, 565 (2011) (internal citations and quotation marks omitted)).  The privilege

does not apply, for example, to "a government attorney's 'advice on political, strategic, or policy

issues, valuable as it may [be,]'" Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just., 538

F. Supp. 3d 124, 135 (D.D.C. 2021) (citation omitted), nor does it apply where a document

"would have been created 'in substantially similar form' regardless of the litigation," Ellis v.

U.S. Dep't of Just., 110 F. Supp. 3d 99, 108 (D.D.C. 2015) (quoting Deloitte LLP, 610 F.3d at

138).  "The government cannot satisfy [its] burden with affidavits that are vague or conclusory,

or merely parrot the statutory standard." Env't Integrity Project v. Small Bus. Admin., 151 F.

Supp. 3d 49, 53 (D.D.C. 2015) (citing Consumer Fed'n of Am. v. U.S. Dep't of Agric., 455 F.3d

283, 287 (D.C. Cir. 2006)).

Moreover, the government "bears a heavier burden when seeking work-product

protection for a multi-purpose document because the D.C. Circuit has also recognized that 'the

[work-product] privilege has no applicability to documents prepared by lawyers in the ordinary

course of business or for other non-litigation purposes.'" United States v. ISS Marine Servs.,

Inc., 905 F. Supp. 2d 121, 134 (D.D.C. 2012) (quoting Sealed Case, 146 F.3d at 887) (internal

quotation marks and citation omitted).  In such circumstances, the government "must 'explain with reasonable particularity' how the documents withheld as work product were prepared in their particular form 'because of the prospect of litigation' or why they would have been prepared in a different form in the ordinary course of business." U.S. Equal Emp. Opportunity Comm'n v. Geo. Wash. Univ., 342 F.R.D. 161, 182 (D.D.C. 2022) (quoting U.S. Equal Emp. Opportunity Comm'n v. Geo. Wash. Univ., No. 17-cv-1978 (CKK), 2021 WL 7907064, at *5 (D.D.C. Sept. 23, 2021)).

In its prior Memorandum Opinion, this Court concluded that, based on the record before it at that time, the defendant had not explained "with reasonable particularity" how the Ethics Memo was "drafted with the specific perspective of Ms. Ketcham's anticipation of litigation, distinct from how the Ethics Memo would have been drafted under normal circumstances where a Member merely sought recusal guidance." Protect the Public's Trust, 2025 WL 1233894, at *9.  Further, the Court noted that while the Ketcham Declaration indicated "that the Ethics Memo served as a 'roadmap for addressing ethics issues that could arise in anticipated future litigation[,]'" id., "nothing in the unredacted portion of the Ethics Memo appear[ed] to reference litigation strategies or defenses[,]" id.[5]  The Court then determined that although the Ethics Memo appeared to address various government ethics regulations and legal ethics rules, the redactions to the Ethics Memo left unclear whether the Ethics Memo's analysis "reference[d] anticipated arguments in litigation, as opposed to merely offering guidance as to the applicability and effect of those ethical rules, independent of any litigation." Id.  Nonetheless, the Court

---

[5] The Court noted its opposition to the defendant's argument "that the mere existence of litigation concerning contentious rulemaking, such as the joint employer rule, renders the withheld portions of the Ethics Memo protected by [the] work product privilege[,]" id. at *9 n.6 (citation omitted), because "[a]dopting such a holding would run afoul of this Circuit's requirement that a district court make 'a case-specific determination that a particular document in fact was prepared in anticipation of litigation before applying the privilege to government records[,]'" id. (quoting Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 251).

concluded that "because it is certainly possible that at least some of the withheld portions of the Ethics Memo could indicate that the privilege and exemption apply, the Court believe[d] further inquiry on its part is necessary." Id. at *10.

Now, with the benefit of the defendant's renewed motion for summary judgment and supplemental declarations, as well as the Court's own in camera review of the Ethics Memo itself, the Court concludes that the defendant has satisfied its burden of invoking the attorney work product privilege. Specifically, for the following reasons, the Court concludes that when DAEO Ketcham and Alternate DAEO Allen drafted the Ethics Memo, they believed that litigation regarding the Members' participation in defending the Board's Joint Employer Rule— whether in the context of the SEIU lawsuit, a future challenge to the 2020 Joint Employer Rule, or an administrative adjudication—"was a real possibility[,]" Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 251 (quoting Sealed Case, 146 F.3d at 884), and that this belief was "objectively reasonable[,]" id.

First, the defendant's renewed motion for summary judgment and the supplemental declarations provide more context regarding the process employed in drafting the Ethics Memo. Specifically, the Allen Declaration details in greater depth the Board's response to the requests from Members Wilcox and Prouty, which included both the Ethics Office and other agency components. According to the Allen Declaration, upon receipt of the request for guidance submitted by Member Wilcox on September 22, 2021, the Ethics Office began coordinating with the Division of Legal Counsel "to discuss the SEIU litigation and Member[] Wilcox's request." Allen Decl. ¶ 3. Mr. Allen and other members of the Ethics Office then met with Ms. Kessler Platt, the Associate General Counsel of the Division of Legal Counsel; and Dawn Goldstein, who was "head of the Contempt, Compliance, and Special Litigation Branch, which has the

responsibility for defending the SEIU lawsuit."  Id.; see 2d Platt Decl. ¶ 21 (describing the same meeting).  The Allen Declaration represents that "[i]n that meeting, [the participants] discussed the status of and allegations in the SEIU . . . Joint Employer Rule litigation."  Allen Decl. ¶ 3.  Thus, even before the Board received Member Prouty's request and the Right to Work Letter on October 5, 2021, the Ethics Office and several litigating components had already started to confer about potential recusal concerns in regards to the SEIU litigation.

However, the Allen Declaration reaffirms that the Ethics Memo was drafted "in respon[se] to the two Board Member requests[,]" and that it "considered, among other issues, the arguments that the [Right to Work Letter] made" arguing for the Board Members' recusal.  Id. ¶ 5.  The Allen Declaration further represents that the Ethics Office drafted the Ethics Memo with the appreciation that recusal arguments had been previously litigated in the Board's joint employer adjudications, see id. ¶ 7, and that comments submitted in response to the 2020 Joint Employer Rule had similarly raised recusal arguments relating to various Members, see id. ¶ 6.  Thus, the Ethics Memo served "not only to assist the Board Members in [complying with] their ethical obligations, but also in order to ensure that the [Board]'s litigation defense would not be challenged based on ethics grounds and therefore jeopardize the defense of the validity of the Joint Employer rule."  Id.

The defendant's renewed motion for summary judgment and supplemental declarations also make clear the extent to which the Board was concerned with any challenges to its actions based on ethics concerns.  Specifically, the Allen Declaration represents that the Board has been forced to defend its rulemakings, including those relating to its joint employer standards, in federal district court, and that comments submitted in response to proposed rules have highlighted Members' recusal concerns.  See id. ¶¶ 6–7.  Further, the defendant notes that

15

because the Board's adjudications are not self-enforcing, see Def.'s Reply at 6 n.6, they must be affirmed by a federal circuit court of appeals, which provides another avenue for challenging Members' decision to recuse themselves from participation in adjudications, see, e.g., District Hosp. Partners, L.P. v. Nat'l Labor Rels. Bd., 141 F.4th 1279, 1295–96 (D.C. Cir. 2025) (rejecting recusal arguments relating to Member Prouty's participation under federal ethics regulations and administrative law due process principals).  Thus, based on the Board's reliance on federal court litigation to defend and enforce its actions, the prior litigation of Members' recusal obligations in the Joint Employer Rule context, and the continued scrutiny of Members' recusal obligations in that context, underscored by the Right to Work Letter, the drafters of the Ethics Memo reasonably believed that litigation regarding the participation of Members Prouty and Wilcox in defending the Joint Employer Rule "was a real possibility[.]"  Nat'l Ass'n of Crim. Def. Laws., 844 F.3d at 251 (quoting Sealed Case, 146 F.3d at 884).

Second, the content of the unredacted Memo itself confirms that it was drafted "because of" current and anticipated litigation.  Specifically, the Allen Declaration and the Court's own in camera review of the unredacted Ethics Memo clarify how the Ethics Memo was drafted as "a roadmap for addressing ethics issues that could arise" both potentially in the SEIU lawsuit or other anticipated future litigation regarding the Joint Employer Rule.  Allen Decl. ¶ 8.  The Allen Declaration represents, and the Court agrees, that "[w]hile the SEIU litigation was broadly discussed throughout the Ethics Memo, certain redacted portions were drafted with the specific perspective of the anticipation of litigation concerning these ethics issues," such as contextualizing the application of government ethics regulations and legal ethics rules within the SEIU litigation or federal court litigation more generally.  Id. ¶ 9.  The Allen Declaration further states that, unlike "a memorandum drafted in the ordinary course of general DAEO

16

responsibilities," the Ethics Memo includes discussion of legal ethics rules and prejudgment.[6] Id. (citing Ethics Memo at 12–14).  And, the Court's in camera review of those portions of the Ethics Memo, read in conjunction with the unredacted portions, makes clear that the Ethics Memo was drafted with an eye toward recusal arguments the Ethics Office anticipated would arise in legal challenges, rather than merely offering guidance as to the applicability and effect of those ethical rules, independent of any litigation.

Nonetheless, the plaintiff argues that the defendant has still failed to satisfy its burden of establishing that the Ethics Memo was drafted "because of" litigation.  The plaintiff first argues that employees have a strong interest, independent of litigation, to seek prophylactic ethics guidance to protect themselves from potential sanctions, see Pl.'s Mem. at 12–13, and that the timing of the Ethics Memo indicates that it was drafted for that purpose and not to protect the Board from litigation risk, see id. at 13.  Relatedly, the plaintiff argues that because the Ethics Memo was addressed to the Members and not to the Board or litigation staff, it was clearly for the individual Members' benefit and not the Board's.  See id.  Finally, the plaintiff argues that, despite the Allen Declaration's representations, the portions of the Ethics Memo addressing legal ethics rules and prejudgment "reasonably fall into [the] DAEO's ordinary statutory requirement to give advice on government ethics laws to current employees[,]" id. at 17 (citing 5 C.F.R. § 2638.104(c)(4)), and therefore would have been created in the DAEO's ordinary course of business.  Nor, according to the plaintiff, should the Right to Work Letter change the Court's assessment because it "did not threaten litigation[,]" and "is best viewed as an administrative

_____

[6] Although administrative rulemakers and adjudicators are presumed to be neutral, see United States v. Morgan, 313 U.S. 409, 421 (1941), parties may seek to disqualify those administrators by identifying evidence of bias or the risk of bias or prejudgment of the parties or issues, see, e.g., Meta Platforms, Inc. v. Fed. Trade Comm'n, 723 F. Supp. 3d 64, 89 (D.D.C. 2024).

complaint, as reflected by the fact that it was addressed to the Inspector General and the agency ethics officer." Id. at 20.

For the following reasons, none of these arguments are persuasive. First, while federal employees, including Board Members, may be required to seek ethics guidance or may otherwise wish to do so as a prophylactic against potential sanctions, and while the DAEO may be required to provide ethics guidance and counseling regarding applicable ethics laws and regulations, not all ethics guidance is the same. As indicated above, the context surrounding the drafting of the Ethics Memo and content of the Ethics Memo itself make clear that it was drafted with an appreciation of the recusal arguments based on federal ethics regulations and administrative law that might be raised in litigation challenging the Board's actions.

Moreover, as the Allen Declaration makes clear, the Ethics Office drafted the Ethics Memo after consulting with members of the Division of Legal Counsel and the head of the Contempt, Compliance, and Special Litigation Branch, which is responsible for defending the SEIU lawsuit. See Allen Decl. ¶ 3. That context is consistent with the content of the Ethics Memo and underscores the extent to which the Ethics Office sought to anticipate recusal arguments and legal risk to the Board's actions that were specific to the then-pending SEIU lawsuit and similar anticipated challenges to the 2020 Joint Employer Rule. Although the plaintiff argues that adopting the defendant's position that the attorney work product privilege applies to the Ethics Memo "would create an exception that swallows the rule in nearly every mildly controversial regulatory action[,]" Pl.'s Mem. at 19–20, the Court's conclusion does not rest on the contentious nature of the Joint Employer Rule as a whole, but rather on the drafters' attention to the specific scrutiny of individual Members' participation in joint employer adjudications and rulemaking, as well as litigation regarding Members' recusal obligations in

18

that context.  Further, although the plaintiff argues that there is a distinction between the Board's adjudications and its participation in litigation, see id. at 20, as indicated above, the Board relies in both contexts on federal court litigation to defend and enforce its actions, and thus concerns regarding due process, bias, and prejudgment of the issues can arise in either scenario.

Finally, the Court disagrees with the plaintiff's attempts to downplay the Right to Work Letter as merely "an administrative complaint[.]"  Id. at 20.  It is clear based on the now-supplemented record that the drafters of the Ethics Memo believed, based on both prior scrutiny of Members' recusal obligations and the arguments raised in the Right to Work Letter, that there was a real possibility that Right to Work or another organization would raise similar recusal arguments to challenge the Board's rulemaking or enforcement actions through litigation.  And, the fact that the Right to Work Letter does not expressly threaten litigation does not undermine the drafters' belief that recusal arguments would be made in the SEIU lawsuit or other anticipated litigation.  Thus, the Court concludes that the defendant has now provided document-specific justifications for why the Ethics Memo was drafted in anticipation of litigation, and the Court's own in camera review of the Ethics Memo's contents are consistent with the defendant's justifications.  Accordingly, the Court concludes that the full Ethics Memo is protected by the attorney work product privilege and can be withheld pursuant to FOIA Exemption 5.

**B.      Whether the Board Waived the Attorney Work-Product Privilege by Communicating with Congress**

The plaintiff next argues that the Board has waived any applicable privilege because it "has effectively asserted an advice of counsel defense in response to Congressional and public concerns that Members Wilcox and Prouty should have recused themselves, relying on affirmative statements that the [DAEO] examined and cleared their participation, then attempting

19

to hide behind the privilege when asked what the [DAEO] actually wrote."  Pl.'s Mem. at 21. Specifically, the plaintiff argues that because Chairman McFerran's letter to Congress summarized the conclusions of the Ethics Memo in response to Congressional recusal concerns, the Board "put the Ethics Memo at issue in the public debate through their selective disclosure[,]" and may not now "retreat behind the shield of work-product privilege to hide the Ethics Memo from the public."  Id. at 23.  The defendant responds that "[t]he one-paragraph description of the DAEO's conclusions in the letter to Congress [ ], taken from the [fourteen]-page Memo, does not nearly approach the required specificity for a finding of waiver by official disclosure[,]" Def.'s Reply at 8 (citations omitted); and it has not otherwise "sought to use the Ethics Memo in any adversary process against [the p]laintiff[,]" id. at 11.

Although the Board "cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain,'" Davis v. U.S. Dep't of Just., 968 F.2d 1276, 1279 (D.C. Cir. 1992) (citing Afshar v. Dep't of State, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983)), "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption," Wolf v. Cent. Intel. Agency, 473 F.3d 370, 378 (D.C. Cir. 2007) (citation omitted), and "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld," Afshar, 702 F.2d at 1130; see also Wolf, 473 F.3d at 378 ("[T]he inquiry turns on the match between the information requested and the content of the prior disclosure.").

Here, the plaintiff does not meaningfully argue that the publicly-disclosed one-paragraph summary of the Ethics Memo "appears to duplicate that being withheld," Afshar, 702 F.2d at 1130, "mirror[s] precisely the information that [it has] requested," Cottone v. Reno, 193 F.3d

20

550, 555 (D.C. Cir. 1999), or "precisely track[s] the records sought to be released," Assassination Archives & Rsch. Ctr. v. Cent. Intel. Agency, 334 F.3d 55, 60 (D.C. Cir. 2003). Nor could it, because the plaintiff has "not shown that the information previously disclosed is as specific as, or matches, the information that [it] now demand[s,]" Dongkuk Int'l, Inc. v. U.S. Dep't of Just., 204 F. Supp. 3d 18, 29 (D.D.C. 2016), which is confirmed by the Court's in camera review of the Ethics Memo.

Instead, the plaintiff argues, relying on a different line of legal authority, that the Board has waived attorney work product privilege by attempting to "use the attorney work-product privilege as both a sword and a shield."  Pl.'s Mem. at 21.  "[W]hile the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege."  United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980).  However, "disclosing work product to a third party can waive protection if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary."  Deloitte, 610 F.3d at 140 (internal quotation marks omitted).  In other words, "voluntary disclosure of attorney work product to an adversary or a conduit to an adversary waives work-product protection."  Id.  Further, a party may waive the privilege by putting a particular record or communication at issue if it "selectively disclose[s] part of a privileged communication in order to gain an advantage in litigation[,]" Koch v. Cox, 489 F.3d 384, 390 (D.C. Cir. 2007) (citations omitted), because parties may not "employ privileges both as a sword and as a shield[,]" id. (citation omitted); see also Rockwell Int'l Corp. v. U.S. Dep't of Just., 235 F.3d 598, 605–06 (D.C. Cir. 2001) (noting that privilege may be waived where a party "attempts to make a testimonial use of th[e privileged] materials").

21

However, the plaintiffs have failed to identify any testimonial or other use of the privileged Ethics Memo in any adversary or quasi-adversary process, such that disclosure would be "necessary to protect the adversary system." Rockwell, 235 F.3d at 606.  Rather, as the plaintiff acknowledges, see Pl.'s Mem. at 29, Chairman McFerran's letter was addressed to members of Congress in response to their concerns about the participation of Members Wilcox and Prouty in responding to the SEIU lawsuit, and specifically the need to "preserv[e] the integrity of the National Labor Relations Board's decisionmaking process[,]" Pl.'s Mot., Ex. A (Letter from Lauren McFerran, Chairman, National Labor Relations Board, to Hon. Mike Braun, et al. ("McFerran Letter") (Nov. 5, 2021)) at 1, ECF No. 25-2.  Chairman McFerran's letter, which summarized in a single paragraph the DAEO's conclusions in the Ethics Memo, see id. at 1, emphasized the Board's "comfort" with the Members' participation, and thus, to the extent it made any use of the conclusions in the Ethics Memo, it did so "in a dispute with a co-equal branch of government" regarding congressional concerns about the Board's integrity and not in the context of any adversary proceeding, Rockwell, 235 F.3d at 607.  Further, the one-paragraph summary of the Ethics Memo's conclusions contained in the letter to Congress is virtually identical to the unredacted paragraph summarizing the Ethics Memo's conclusions.  Compare Pl.'s Mot., Ex. A (McFerran Letter) at 2, ECF No. 25-2, with Compl., Ex. 5 (Ethics Memo) at 14.

Therefore, the Court concludes that the plaintiff has failed to establish that the Board waived the attorney work product privilege applicable to the Ethics Memo.  And, because the Ethics Memo is "fully protected as work product, [ ] segregability is not required." Jud. Watch v. Dep't of Just., 432 F.3d 366, 371 (D.C. Cir. 2005).

**C.       Whether the Board Has Complied with the FOIA's Foreseeable Harm Requirement**

Finally, the defendant argues that it has complied with the FOIA's foreseeable harm requirement because: (1) as a general matter, courts have regularly concluded that the foreseeable harm of disclosing records protected by the attorney work product privilege is self-evident, see Def.'s Mem. at 26–27; and (2), in any event, the Board has adequately explained that the full release of the Ethics Memo would cause foreseeable harm both to the Board's "ability to prepare for and present its position on anticipated legal challenges[]" to its Members' participation in ongoing and anticipated litigation surrounding the Joint Employer Rule, id. at 26 (quoting Ketcham Decl. ¶ 6), as well as "to the Board's ethics recusal process as a whole[,]" id. at 27.  In response, the plaintiff argues that the Board's "generalized assertions" about the work-product privilege and conclusory assertions of the harm to the Board's ability to prepare for anticipated litigation are "insufficient to satisfy the Board's burden[]" under the FOIA's foreseeable harm requirement.  Pl.'s Mem. at 24.

Congress adopted the foreseeable harm requirement to prevent "the withholding of materials unless the agency can 'articulate both the nature of the harm [that would result from its release] and the link between the specified harm and specific information contained in the material withheld.'"  Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting H.R. Rep. No. 114-391, at 9 (2016)).  Thus, the foreseeable harm requirement "impose[s] an independent and meaningful burden on agencies." Ctr. for Investigative Reporting v. U. S. Customs & Border Prot., 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (citation omitted).

Although this requirement applies to any invocation of a FOIA Exemption, "Congress added the distinct foreseeable harm requirement" specifically to limit "increasing agency overuse

23

and abuse of Exemption 5 and the deliberative process privilege." Reps. Comm for Freedom of the Press, 3 F.4th at 369 (citing H.R. Rep. No. 114-391, at 9–10).  Thus, "an agency's burden . . . may be more easily met when invoking other privileges and exemptions for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot., 567 F. Supp. 3d 97, 120 (D.D.C. 2021).  Although establishing that a privilege applies "will go a long way to show the risk of foreseeable harm[,]" id. at 124, "an agency must still provide a non-generalized explanation on the foreseeable harm that would arise from disclosure of" the privileged records, id.

Here, the plaintiff makes several arguments as to why the concerns underlying the attorney work product privilege "do not apply to the Ethics Memo."  Pl.'s Mem. at 25.  The crux of the plaintiff's position is that ethics memoranda are "already presumptively disclosable" and drafted not "to benefit the ethics office or even the Board itself[,]" but instead are prepared at the request of individual members to protect them "against personal disciplinary actions."  Id. at 26. Thus, according to the plaintiff, the defendant's "boilerplate rationale" regarding the chilling effect release of the full Ethics Memo would have on agency deliberations and sharing of advice are insufficient to justify withholding.  Id.  However, for several reasons, the Court finds these arguments unpersuasive and ultimately concludes that the defendant has satisfied its burden of establishing the foreseeable harm that would arise from disclosure of the complete Ethics Memo.

As the Supreme Court has recognized, the work-product privilege is a cornerstone of our legal system and protects lawyers' ability to "assemble information, sift what [they] consider[] to be the relevant from the irrelevant facts, prepare [their] legal theories and plan [their strategy] without undue and needless interference."  Hickman v. Taylor, 329 U.S. 495, 511 (1947).  Other

members of this Court have found foreseeable harm from disclosing attorney work product to be "self-evident" based on the "context and purpose" of the privileged records, even where the agency's articulation of harm is lacking.  Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec., No. 20-cv-1128 (TNM), 2022 WL 1081097, at *6 (D.D.C. Apr. 11, 2022); see also Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just., No. 19-cv-2267 (LLA), 2025 WL 2829203, at *7 (D.D.C. Oct. 6, 2025); Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just., No. 23-cv-26 (JEB), 2024 WL 3858560, at *9 (D.D.C. Aug. 19, 2024); Machado Amadis v. Dep't of Just., 388 F. Supp. 3d 1, 20 (D.D.C. 2019), aff'd, 971 F.3d 364 (D.C. Cir. 2020).

Contrary to the plaintiff's assertions, the defendant has provided more than boilerplate justifications for the withholding of the complete Ethics Memo.  While the Board's explanation of the chilling effects the release of ethics memoranda would have on its ethics recusal assessment processes as a whole are indeed more generalized, the Ketcham, Allen, and Second Platt Declarations all emphasize the specific and concrete foreseeable harm that would arise from the release of the unredacted Ethics Memo at issue in this case.  Specifically, the Ketcham and Allen Declarations represent that releasing the complete Ethics Memo, including its internal legal analyses of issues related to ongoing and future litigation, including the active SEIU lawsuit, would "impair the NLRB's ability to prepare for and present its position on anticipated legal challenges[]" to Board Members' participation in the litigation and rulemaking process by disclosing in advance the Board's legal arguments to potential litigants.  Ketcham Decl. ¶ 6; see Allen Decl. ¶ 11.  The Second Platt Declaration confirms as much, indicating that Ms. Platt "anticipated that these recusal issues could be raised in the pending SEIU litigation seeking to invalidate the 2020 Joint Employer Rule (or in another challenge to the 2020 Joint Employer

25

Rule), and I did not want to prematurely release what the [Board] would say in response to any recusal allegations." 2d Platt Decl. ¶ 18.

Although the plaintiff argues that the defendant's representations are undermined by the statutory requirements regarding the provision of ethics advice as a prophylactic against disciplinary action, see Pl.'s Mem. at 25–26, those general requirements do not undermine the defendant's representations that releasing the Ethics Memo at issue in this case would impair the Board's ability to defend its actions in ongoing and anticipated litigation based on arguments that Members Wilcox and Prouty were required to recuse themselves.[7]  Thus, the Court is now satisfied that the defendant's representations about the foreseeable harm that would result from releasing the complete Ethics Memo at issue in this case, separate and apart from ethics memoranda in general, have sufficiently "articulate[d] both the nature of the harm [that would result from its release] and the link between the specified harm and specific information contained in the material withheld." Reps. Comm. for Freedom of the Press, 3 F.4th at 369 (quoting H.R. Rep. No. 114-391, at 9).  Accordingly, the Court concludes that the defendant has satisfied its burden of demonstrating foreseeable harm.[8]

---

[7] In support of its argument, the plaintiff relies on a decision by another member of this Court rejecting the applicability of the attorney-client and deliberative process privileges to a final ethics memorandum. See Pl.'s Mem. at 25 (citing Citizens for Resp. & Ethics in Wash. v. U.S. Postal Serv., 557 F. Supp. 3d 145, 154–57 (D.D.C. 2021)). However, the Board has not asserted these privileges in regards to the Ethics Memo here, and the concerns underpinning the attorney work product privilege are distinct.  Thus, this argument is inapposite.

[8] The plaintiff's Complaint also contends that the defendant "improperly invoked Exemption 5 as applicable to subsections of the Memorandum" because the Ethics Memo is a "final opinion" and, thus, Exemption 5 cannot apply.  Compl. ¶ 35.  However, in its cross-motion for summary judgment, the plaintiff instead argues that, even if the Ethics Memo is "a final agency opinion" or "working law[,]" the Board must nonetheless disclose portions of the Ethics Memo not protected by the attorney work product privilege and a concrete assertion of foreseeable harm.  See Pl.'s Mem. at 15–16.  Because the Court has concluded that the Board has: (1) properly withheld the Ethics Memo pursuant to the work product privilege and Exemption 5; and (2) demonstrated the foreseeable harm of releasing the complete Ethics Memo, it concludes that the defendant has properly withheld the redacted portions of the Ethics Memo, even assuming arguendo that it constitutes a final agency opinion.  See Tax Analysts v. Internal Revenue Serv., 294 F.3d 71, 76 (D.C. Cir. 2002) (affirming the district court's determination that the defendant agency "need not segregate and release agency working law from [records] withheld in their entirety pursuant to the attorney work product privilege").

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's renewed motion for summary judgment and deny the plaintiff's renewed cross-motion for summary judgment.

**SO ORDERED** this 27th day of March, 2026.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

27